FRITZ, A MINOR, ET AL., APPELLANTS, *v.* CITY OF COLUMBUS,
APPELLEE.

[Cite as Fritz v. City of Columbus, 5 Ohio St. 2d 53.]

(No. 39390—Decided January 19, 1966.)

54

*Messrs. Schwenker, Teaford, Brothers & Bernard* and *Mr. John W. McCormac*, for appellants.

*Mr. John C. Young*, city attorney, and *Mr. Alba L. Whiteside*, for appellee.

O'NEILL, J. The single question presented to this court for decision is whether the court below erred in determining that the facts alleged in the petition are insufficient to constitute a cause of action.

Plaintiff's action is based upon Section 723.01, Revised Code, which states:

"Municipal corporations shall have special power to regu-

late the use of the streets. The legislative authority of such municipal corporations shall have the care, supervision, and control of public highways, streets, [and] avenues * * * within the municipal corporation, and shall cause them to be kept open, in repair, and free from nuisance.''

Section 2105.05 of the City of Columbus Traffic Code states:

''The Safety Director shall establish and designate * * * yield right of way intersections, at which intersections shall be maintained the appropriate traffic control devices to regulate traffic and promote public safety. The Safety Director shall have all necessary authority to erect, or cause to be erected, appropriate and legible signs or markers, upon which shall be displayed * * * the words 'yield right of way', at all intersections designated by said director as yield right of way intersections.''

It is clear from this section that the Safety Director *effectively* establishes and designates an intersection as a yield-right-of-way intersection by the erection of a sign or marker which *displays* the words, ''yield right of way.'' This is the only way that the motoring public approaching such an intersection can be advised of such designation.

There was no duty upon the Safety Director to erect yield-right-of-way signs at the intersection involved in this cause of action. Had there been no yield-right-of-way sign erected at this intersection there could be no nuisance.

The plaintiff's petition alleges that ''at all times * * * the 'yield' sign'' at this intersection *''was totally obscured by tree limbs and leaves,''* and at another point the petition alleges that the city installed the ''yield'' sign in a location where *it was obscured.*

There was, therefore, in fact no yield sign at this intersection. It was the same as if there had been a post with a metal or plastic board attached thereto which was blank. There is no allegation in the petition that either the plaintiff's driver or the driver of the truck knew of such sign at such intersection, or saw it, or relied upon it, or was misled by it. In fact, the only allegation is that whatever was there in the way of a marker was totally obscured from everybody at all times. Under the statute, where there is no sign at an intersection there

is no nuisance, and in this case there was in fact no sign and, therefore, no nuisance. If there was no nuisance, under the plaintiff's own allegations in his petition, there is no liability.

At an intersection at which there is no yield-right-of-way sign, Section 2131.13 of the City of Columbus Traffic Code governs the flow of traffic. It provides in pertinent part:

"Excepting where otherwise provided, the operator of a vehicle or trackless trolley shall yield the right of way at an intersection to a vehicle or trackless trolley approaching from the right."

This section (Section 4511.41, Revised Code, contains a similar provision) applies to the facts of the instant case.

It may be fairly inferred from the allegations of the petition that plaintiff's driver did not obey that traffic regulation, and that this failure so to do, rather than the obscurity of the yield-right-of-way sign, was the proximate cause of the collision.

In *Tolliver* v. *City of Newark* (1945), 145 Ohio St. 517, plaintiff's vehicle entered an intersection and was struck by another vehicle proceeding from a stop street. The plaintiff brought suit against the city on the theory of nuisance, alleging that the stop sign had been placed on the wrong street (contrary to authorization by council ordinance); that she had "been aware for a long time prior to the said collision of the location of said stop signs and drove into said intersection in reliance upon said stop signs as giving * * * [her] the right of way"; and that the fact that the stop signs had been wrongly placed was a proximate cause of her injury.

The court held that she had not stated a cause of action, basing its holding upon four factors: (1) There were no facts showing that the sign was wrongly placed; (2) a municipality is not liable for the manner in which traffic is regulated on its streets; (3) an ineffective traffic signal is not a nuisance; and (4) the erection of the stop sign was not the proximate cause of the injury.

The court limited the application of Section 3714, General Code (Section 723.01, Revised Code), to "cases which involve the construction or maintenance of the street or physical obstructions or hindrances to traffic." *Tolliver* v. *City of Newark,*

*supra*, at page 523. That case was reaffirmed, *per curiam*, in *Imfeld, Admr.*, v. *City of Hamilton* (1956), 166 Ohio St. 11.

In *Tolliver, supra*, three judges dissented. An analysis of that dissent shows that its focus was upon the misleading of plaintiff by the erecting of allegedly unauthorized stop signs and her reliance upon the signs as giving her the right-of-way. The dissenters' view was that this was sufficient to present the issue of proximate cause for determination by a jury.

The instant case presents no such problem because there is no allegation of knowledge or reliance on the part of plaintiff's driver.

A "yield" right-of-way sign erected at the intersection of two city streets, which was totally obscured at the time it was first erected and has been totally obscured at all times since then, does not create a nuisance pursuant to the provisions of Section 723.01, Revised Code.

The judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

TAFT, C. J., ZIMMERMAN and SCHNEIDER, JJ., concur.

BROWN, J., concurs in the judgment on the basis of paragraph five of the syllabus of *Tolliver* v. *City of Newark*, 145 Ohio St. 517.

MATTHIAS and HERBERT, JJ., dissent.

HERBERT, J., dissenting. Section 723.01 of the Revised Code appears in full in the majority opinion. It confers a grant of special power to muncipal corporations to control the use of public streets. There is no discretion left to a municipality in the performance of its duties under the statute. If it chooses to erect traffic signs, then it assumes a duty which it then owes to the users of the streets to make such signs visible and effective and to provide proper maintenance in order to protect the lives and property of citizens. Such municipality assumes the duty to keep the streets free from nuisance.

The trial court sustained a demurrer to the petition. For purposes of clarity, it will be helpful to consider some of the

58

facts alleged in the petition with which there is an area of disagreement when compared with the majority opinion. I do not believe that the allegations in the petition support the claimed statement of fact in the syllabus to the effect that:

"* * * which sign 'at all times * * * was totally obscured by tree limbs and leaves.' "

The petition alleges:

"At all times *herein mentioned*, the 'yield' sign * * * was totally obscured * * *." (Emphasis added.)

The only date or time mentioned in the petition is June 8, 1962, the time or date of the collision.

The majority opinion states that the petition alleges:

"* * * the city installed the 'yield' sign in a location *where it was obscured*."

The following is quoted from the petition:

"Defendant [city] was negligent in installing the 'yield' sign in a location where leaves and limbs *would obscure the sign*; in failing to keep tree limbs and leaves from obscuring the sign * * * *defendant knew* or should have known of said conditions." (Emphasis added.)

The words, "would obscure," have an entirely different meaning from the words, "was obscured." Inadvertently, the majority opinion interprets the word, "would," to mean "was."

Although there are elements tending to create confusion in ascertaining the meaning of certain allegations of the petition (which should be sufficient to reject the demurrer), the following conclusions may be drawn from the allegations in the petition.

(1) The state has granted to the city of Columbus special powers to control the use of its streets.

(2) The city of Columbus has accepted such grant of power and has put it into operation by certain ordinances.

(3) One ordinance authorizes and empowers the Safety Director to install "yield" signs at certain intersections.

(4) The director thereupon, among other intersections, caused such a sign to be installed at the intersection of Cable and Wisconsin Avenues.

(5) Such sign was installed where it was apparent that trees and limbs *would* obscure it.

(6) Having installed the sign the city failed to give it any further attention and did permit limbs and leaves to grow up and obscure it.

(7) Although no cause of action would have arisen against the city had it not installed the "yield" sign, nevertheless, having installed it, the city assumed a duty to users of the streets to exercise reasonable care in the maintenance of the sign so that its function as an aid to safety would not be impaired.

41 Ohio Jurisprudence 2d 91, Section 2, defines "nuisance" in this language:

"It has been said that a nuisance is something obnoxious or offensive—that is, it is anything which unlawfully and tortiously does hurt, or causes inconvenience, discomfort, or damage to another, and that it consists in unlawfully doing an act, or omitting to perform a duty, which act or omission damages, injures, or endangers the comfort, repose, health, or safety of others, offends decency, *or in any way* renders other persons insecure in life or the use of property."

There were substantial questions of fact that should have been submitted to a jury for determination under appropriate instructions by the court. Among these are the following: **(1)** The city having assumed a duty to users of the streets by installing the "yield" sign, did the city exercise reasonable care in the performance of such duty?; (2) did the city create a nuisance?; (3) would the collision in question have occurred had the "yield" sign been visible on June 8, 1962?; and (4) if the defendant city had created a nuisance, was it the proximate cause of plaintiff's injuries?

It appears to me, at least, that if all the cities of Ohio may install thousands of traffic control signs at intersections and then completely ignore any care or maintenance of such signs, as indicated in the majority opinion, the increase in traffic injuries and death will be tragic.

The judgment of the Court of Appeals should be reversed, and the cause remanded for further proceedings according to law.