REYNOLDS, APPELLANT, *v.* CITY OF OAKWOOD, APPELLEE, ET AL.

126

(No. CA 9653—Decided
April 14, 1987.)

*Dan D. Weiner,* for appellant.
*Michael W. Krumholtz,* for appellee.

KERNS, J. The plaintiff, Laura Reynolds, has appealed from a judgment of the Court of Common Pleas of Montgomery County entered upon a directed verdict for the defendant, city of Oakwood, in an action seeking damages for injuries sustained by Reynolds when her car was struck by an Oakwood police cruiser.

On August 21, 1981, Patrolman Timothy Pigman was at the Oakwood City Garage on Shafor Boulevard when he heard a radio call about a domestic problem, whereupon he left the garage and proceeded in a southerly direction on Shafor Boulevard with his siren sounding and his lights flashing. The north and south lanes of traffic on this residential street are divided by a tree-lined median strip. As Officer Pigman neared the intersection of Shafor Boulevard and Patterson Road, which was less than one half mile from the garage, he saw a red traffic light, but he continued to accelerate. At the time, the plaintiff, Reynolds, was traveling west on Patterson Road and had entered the intersection on the green light when she first heard the siren. As she attempted to cross the southbound lane of Shafor Boulevard, her car was hit broadside by the cruiser.

The plaintiff commenced the present action, naming as defendants Patrolman Pigman, the city of Oakwood, and various city officials, who were subsequently dismissed from the proceedings. Thereafter, defendants Pigman and the city moved for summary judgment on the ground that they were immune from liability under the "emergency call" provisions of former R.C. 701.02 (now repealed); the motions were subsequently granted by the common pleas court. On appeal, this court reversed the granting of summary judgment as it pertained to the city of Oakwood (*Reynolds* v. *Pigman* [Jan. 7, 1985], Montgomery App. No. CA 8899, unreported).

On remand, the cause proceeded to trial upon an amended complaint which alleged, among other things, the willful and wanton misconduct of Pigman; the gross negligence of Pigman; the negligent design and maintenance of the median strip; the negligent failure to provide preemptive traffic lights; and negligence in the training of Officer Pigman and in the subsequent entrustment of the cruiser to him. At the close of the plaintiff's case, the city of Oakwood moved for a directed verdict. The sustaining of that motion provides the basis for the present appeal to this court.

The appellant has set forth six assignments of error, the first of which has been stated as follows:

"1. The trial court erred in directing a verdict on the issue of willful or wanton misconduct of Officer Pigman."

Under former R.C. 701.02,[1] municipalities were immune from liability for negligence of "[m]embers of the police

---

[1] Cf. R.C. 2744.02(B)(l)(a).

department engaged in the operation of a motor vehicle while responding to an emergency call," but as pointed out by the Supreme Court of Ohio in *Adams* v. *Peoples* (1985), 18 Ohio St. 3d 140, 18 OBR 200, 480 N.E. 2d 428, this provision did not preclude liability for the willful or wanton misconduct of police officers on emergency calls.

In directing the verdict, the trial court found that Pigman's use of his lights and siren negated the claimed willful and wanton misconduct as a matter of law. The court was apparently influenced by the case of *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114, 4 O.O. 3d 243, 363 N.E. 2d 367, wherein it was stated that the failure of a driver to exercise any care whatsoever in a situation where there is a great probability that harm will result constitutes wanton misconduct. Actually, the *Hawkins* case stands for the proposition that a "disposition to perversity" is not required, as well as for the principle that a directed verdict is improper where reasonable minds might differ, but there is nothing in the opinion of the court in that case to support the trial court's application of the converse of the stated proposition, namely, that the presence of any care whatsoever will preclude a finding of wanton misconduct. Unquestionably, the use of lights and a siren is a significant factor to be considered in conjunction with all other circumstances, but the potential absurdity of a steadfast rule denying liability when such devices are used is manifest. For an extreme example, if you will, visualize an officer on an emergency call taking a shortcut through a playground at seventy miles per hour while discharging his revolver.

The term "willful and wanton misconduct" connotes behavior demonstrating a deliberate or reckless disregard for the safety of others, but because the line between such misconduct and ordinary negligence is sometimes a fine one depending on the particular facts of a case, it is generally recognized that such issue is for the jury to decide. *Botto* v. *Fischesser* (1963), 174 Ohio St. 322, 22 O.O. 3d 380, 189 N.E. 2d 127; *Kellerman* v. *J.S. Durig Co.* (1964), 176 Ohio St. 320, 27 O.O. 2d 241, 199 N.E. 2d 562; *Hawkins* v. *Ivy, supra.* The issue should not be withheld from the jury where reasonable minds might differ as to the import of the evidence. Civ. R. 50(A); *O'Day* v. *Webb* (1972), 29 Ohio St. 2d 215, 58 O.O. 2d 424, 280 N.E. 2d 896.

The evidence in the present case, when construed most strongly in favor of Reynolds, as required by Civ. R. 50(A)(4), indicates that Patrolman Pigman, who was apparently inexperienced and untrained in emergency driving procedures, decided to give backup to another officer assigned to investigate a domestic dispute. He determined that the radio message about the domestic problem created an emergency, and he thereupon proceeded upon Shafor Boulevard at speeds in excess of seventy miles per hour in a twenty-five-mile-per-hour zone. Additionally, the evidence reveals that the residential street was lined with trees which limited both visibility of approaching vehicles and the audibility of a siren. Although Pigman saw the traffic light on Patterson Road from two blocks away, by his own admission, he thereafter made no effort to slow down. At the time, the officer was twenty-two years of age, had been on the force for about two months, and had received about two weeks of training for the position.

Under the totality of circumstances, including the candid admissions of Patrolman Pigman, a finding of willful or wanton misconduct was a real possibility. See *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282, 21 O.O. 3d

177, 423 N.E. 2d 467. Indeed, the judgment entry itself in this case sheds some light on the source of the error when it states that "the use of a siren and flashing lights, as well as the application of brakes by the officer prior to the accident, constitute[d] some care toward the general public and *justifies* a finding that there * * * [was] an absence of willful and/or wanton tortious conduct on the part of the officer" (emphasis added). Although this finding may have been "justified," it was not mandated, as a matter of law, or even proper in the application of the fundamental principles attending a motion for a directed verdict, and, accordingly, the assigned error is well-taken.

The second and third assignments of error have been presented by the appellant as follows:

"2. The trial court erred in granting a verdict on the issue of whether or not the trees and obstacles constituted a nuisance under Ohio Revised Code Section 723.01.

"3. The trial court erred in failing to submit to the jury the issue of whether or not the island divider was negligently planned and designed."

The appellant contends that the tree-lined median strip on Shafor Boulevard partially obstructed her line of vision, as well as her ability to hear the siren, and that such strip therefore constitutes a nuisance under R.C. 723.01 for which liability may be imposed upon the city of Oakwood. However, this contention appears to be at odds with a number of cases which have held that neither trees nor traffic islands are nuisances. For example, see *Zupancic* v. *Cleveland* (1978), 58 Ohio App. 2d 61, 12 O.O. 3d 213, 389 N.E. 2d 861; *Fritz* v. *Columbus* (1966), 5 Ohio St. 2d 53, 34 O.O. 2d 121, 213 N.E. 2d 730; *Barnesville* v. *Ward* (1911), 85 Ohio St. 1, 96 N.E. 937; *Rueckert* v. *Shaker Heights* (App. 1937), 25 Ohio Law Abs. 10. In fact, median strips would ordinarily afford a motorist an added measure of safety; and, given the widespread use of such boulevards across this state, we are completely disinclined by economic and environmental considerations to adopt the appellant's position as a rule of law.

Assuming, however, that evidence had been presented from which it might be found that a nuisance existed on Shafor Boulevard, the appellant was nonetheless required to further prove that such condition was or should have been known to the city of Oakwood, and more significantly, that it was a direct and proximate cause of her injuries. *Kocher* v. *Barberton* (1942), 140 Ohio St. 240, 23 O.O. 439, 42 N.E. 2d 977. The only evidence presented on this issue was appellant's testimony that she could not see the cruiser or hear the siren until after she had entered the intersection, and the additional statement of an area resident that he could not hear the siren until the cruiser began passing his house. On the other hand, appellant's expert witness indicated that visibility was not a problem at the intersection and that the high speed of the cruiser was the cause of the accident.

With respect to the third assignment of error, no evidence at all was offered concerning the design and planning of the median strip. And although the trial court's restrictive view of the scope of this case may have hindered the appellant's ability to present evidence relative to these particular issues, it also appears that none of the appellant's proffered evidence would fill the vast deficiency of proof as to these claims. As stated in one early decision, "[a] municipal corporation is not an insurer against accidents upon streets. It is held to reasonable care only in keeping them free from nuisance. Therefore, it is not bound to anticipate improbable or unprecedented events, and provide against their possible

results." *Oak Harbor* v. *Kallagher* (1894), 52 Ohio St. 183, 39 N.E. 144, paragraph one of the syllabus. Since there was no evidence from which reasonable minds could conclude that the appellant's injuries resulted from any breach of duty in this regard, the trial court did not err in withholding this issue from the jury. *O'Day* v. *Webb, supra.* The second and third assignments of error are overruled.

The fourth assignment of error has been alleged by the appellant as follows:

"4. The trial court erred in its failure to submit to the jury the issue of negligence on the part of the city of Oakwood relative to their [*sic*] failure to implement a system that would turn all traffic lights red when emergency vehicles were on emergency runs."

Before appellant was entitled to a jury determination of her claim of negligence, she was required to produce some evidence of a duty which had been breached by the city of Oakwood. *Strother* v. *Hutchinson, supra.* Here, the appellant's claim, which was predicated upon the appellee's failure to equip the traffic light at Shafor Boulevard and Patterson Road with an emergency preemptive device, was not supported by any evidence of a duty to provide such a device. The mere availability of such technology hardly can be regarded as a sufficient basis for requiring its use at a particular intersection.

Under circumstances similar to those presented in this case, it has been held that a city is not liable for its failure to maintain an emergency preemptive relay in working order, even though the traffic signal was so equipped, since there was no requirement that the city provide any such equipment. *Fisher* v. *Wooster* (1982), 4 Ohio App. 3d 250, 4 OBR 442, 448 N.E. 2d 514. Since the record reveals no evidence in this case to warrant a find-

ing that the city of Oakwood was negligent in this regard, a directed verdict on the issue was proper, and the fourth assignment of error is overruled.

The fifth assignment of error has been stated by appellant as follows:

"5. The trial court erred in its decision sustaining defendant's motion in limine pertaining to the defendant's failure to properly train Officer Pigman and properly instruct him relative to the operation of a police vehicle during an emergency run."

In sustaining the appellee's pretrial motion *in limine,* the trial court was apparently under the impression that any evidence as to Patrolman Pigman's training and driving ability was irrelevant in light of the immunity afforded by former R.C. 701.02. However, such determination overlooks the important distinction between a municipality's vicarious liability for the negligent acts of its officers and a city's liability for its own negligence in the hiring and training of officers and in the entrustment of vehicles to them. As to the former, R.C. 701.02 immunized the officers in emergency-call situations, but the statute cannot be fairly interpreted as affecting the latter. Under Ohio law, recovery is permissible from one whose negligence places the actual tortfeasor in a position to cause injuries to another, *Gulla* v. *Straus* (1950), 154 Ohio St. 193, 42 O.O. 261, 93 N.E. 2d 662, and such a claim was raised in these proceedings in the appellant's amended complaint. Under such circumstances, we perceive no valid reason for denying appellant an opportunity to litigate her claim, and any danger that the jury will, on retrial, be misled as to the significance of such evidence can be averted with appropriate instructions. Hence, the assigned error must be sustained.

The final assignment of error has been set forth as follows:

"6. The trial court erred in rulings pertaining to the admissibility of evidence during the trial."

This assignment addresses four separate evidentiary rulings of the common pleas court. Initially, the appellant complains about the exclusion of statements made by her to an Oakwood police officer at the hospital following the accident during the cross-examination of the officer. While agreeing that such statements were hearsay, the appellant contends that they were admissible under Evid. R. 803(2) as excited utterances. However, the proponent laid no foundation to show that the statements qualified as excited utterances under the rule, *Miles* v. *General Tire & Rubber Co.* (1983), 10 Ohio App. 3d 186, 10 OBR 258, 460 N.E. 2d 1377, and in any event, the appellant can claim no prejudice from the exclusion of the statements because the same evidence was admitted through her testimony at the trial. See *Sherer* v. *Smith* (1951), 155 Ohio St. 567, 44 O.O. 506, 99 N.E. 2d 763.

The trial court also sustained an objection, on the basis of relevancy, to a question presented to a witness concerning the size and location of the trees on the median strip and their effect upon the audibility of the siren. Such evidence would appear to be relevant to the appellant's claim of negligent planning and maintenance, but for the reasons discussed under the second and third assignments of error, the ruling did not constitute prejudicial error.

Next, appellant challenges the ruling sustaining an objection to her statement that "I was in the intersection, and it is the law to clear the intersection." It was hardly the function of the witness to instruct the jury as to what the law was under the circumstances, and the objection was properly sustained by the trial court. See *Warnock* v. *Youngstown Bag & Burlap Co.* (App. 1932), 14 Ohio Law Abs. 85, 87.

Finally, appellant argues that the court erred in refusing to permit her attorney to question her as to other parts of a deposition on redirect examination after she had been cross-examined as to a prior inconsistent answer in the deposition. While questioning is permissible to rebut an express or implied charge of fabrication, Evid. R. 801(D)(1)(b); Civ. R. 32(A)(4), the attempted redirect examination herein pertained to a completely separate and unrelated portion of the deposition, and the trial court was not required to allow such self-serving and cumulative evidence.

It is fundamental that a reviewing court should not reverse upon evidentiary rulings unless the trial court has abused its discretion in a manner which has caused material prejudice. *State* v. *Hymore* (1967), 9 Ohio St. 2d 122, 38 O.O. 2d 298, 224 N.E. 2d 126. Whereas the breadth of the allegations of the complaint warranted some latitude in the presentation of evidence in these proceedings, none of the specified rulings was prejudicially erroneous, and the sixth assignment of error is overruled.

The judgment of the court of common pleas is reversed and the cause is remanded to that court for further proceedings according to law.

*Judgment reversed*
*and cause remanded.*

BROGAN and WILSON, JJ., concur.