OPINION
This is an appeal from the Portage County Court of Common Pleas. Appellant, Lawrence D. Ferrell, Administrator of the Estate of Stephanie M. Ferrell ("Ferrell"), appeals a judgment entry granting the motion for summary judgment of appellees, Windham Township Police Department and Thomas J. Denvir ("Denvir").[1]
The following facts are taken largely from Denvir's affidavit and deposition testimony. At approximately 2:00 a.m. on October 1, 1994, Duane Burns was driving his white Mustang automobile with Ferrell seated in the passenger side back seat and Shawn Barber seated in the front passenger's seat. Denvir was on routine patrol that morning and noticed the Mustang squeal its tires as it turned from East Center Street onto Maple Grove Road. Denvir entered his cruiser and began to follow the Mustang onto Maple Grove Road. During the initial stages of the pursuit, another vehicle was between Denvir's cruiser and the Mustang. All three vehicles turned onto North Main Street and just after the automobiles passed under the Ohio Turnpike overpass, Denvir activated his siren and overhead lights with the intent to conduct a traffic stop of the Mustang.[2] Almost immediately, the automobile between Denvir's vehicle and the Mustang pulled to the side of the roadway and Denvir pursued the Mustang over several wet, hilly, and winding roads.
The Mustang accelerated and turned right onto Silica Sand Road as Denvir continued pursuit. Shortly thereafter, the Mustang turned left onto Newel Ledge Road and Denvir lost sight of the vehicle. Denvir then ended his pursuit of the Mustang "due to safety and weather and road conditions" after he crossed the intersection of Newel Ledge Road and Pierce Road, because he did not know whether the vehicle had turned onto Pierce Road, or had continued straight on Newel Ledge. Denvir traveled to the intersection between Newel Ledge and Knowlton Roads, and then traced the same path back to Windham. Denvir did not learn until several hours later that the Mustang had crashed into a group of trees just off of Newel Ledge Road, and all three occupants of the vehicle were killed.
Other evidence in the record indicates that Denvir's average speed during the entire pursuit was at least seventy-five m.p.h. Moreover, appellant's expert estimated Denvir's speed on a one and one-half mile stretch on Silica Sand Road to be eighty-three m.p.h.
Two occupants of a vehicle parked in a driveway on Silica Sand Road heard one vehicle pass at a high rate of speed and observed a police cruiser follow the first automobile. The two individuals then followed the pursuit of the Mustang by the cruiser from a distance, turned onto Newel Ledge Road, and then onto Knowlton Road, where they observed a police cruiser driving toward them at a low rate of speed, scanning the areas off the side of the road with a spotlight.
The record does not contain any evidence indicating that the vehicles were traveling at an excessive rate of speed on Newel Ledge Road, where the accident occurred. Timothy Cain, who resided on Newel Ledge Road, stated in his affidavit that he observed a police cruiser trailing a Mustang by about fifteen seconds. He further noted that the Mustang was traveling approximately forty-five to fifty m.p.h. Cain added that the cruiser was accelerating, but he did not estimate its speed. Denvir, on the other hand, testified that he was traveling "[a]pproximately 55 [m.p.h.]" on Newel Ledge Road.
Appellant filed a complaint in the Portage County Court of Common Pleas on June 1, 1995, against the Village of Windham Police Department and Denvir.[3] The first count alleged that Denvir's wanton and willful misconduct caused Ferrell's wrongful death. The second claim against appellees was a cause of action under Section 1983, Title 42, U.S. Code. On August 26, 1996, appellees moved for summary judgment on all of appellant's claims. In support of their motion for summary judgment, appellees attached only Denvir's affidavit. On October 15, 1996, appellant filed his brief in opposition to appellees' motion for summary judgment. Accompanying his response, appellant attached Denvir's deposition and numerous affidavits.
In a judgment entry filed on March 26, 1997, the trial court granted appellees' motion for summary judgment on each of appellant's claims. The court concluded that there was no genuine issue of material fact regarding whether Denvir's conduct was the proximate cause of Ferrell's death. Furthermore, the court held that both the Village of Windham and Denvir were immune from appellant's wrongful death claim pursuant to R.C. Chapter 2744. Finally, the court determined that appellant failed to present a cognizable claim under Section 1983, Title 42, U.S. Code. Appellant filed a timely notice of appeal and asserts the following as error:
 "[1.] The trial court erred in deciding as a matter of law that [appellees'] high speed pursuit was not the proximate cause of Stephanie M. Ferrell's death.
 "[2.] The trial court erred in deciding that [appellees] are immune from liability for Stephanie M. Ferrell's death under [R.C.] Chapter 2744.
 "[3.] The trial court erred in deciding that [appellant's] allegations were insufficient as a matter of law to maintain a claim under [Section 1983, Title 42, U.S. Code.]"
In a summary judgment exercise, the Supreme Court of Ohio has repeatedly held that in order for summary judgment to be granted, the moving party must demonstrate that:
 "(1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385.
The moving party has the initial burden of identifying specific Civ.R. 56(C) evidence that demonstrates the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. If the moving party satisfies this burden, then the nonmoving party has a burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact and if the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Id.
Applying these standards, we will first address the second assignment of error because our conclusion on that assignment is also dispositive of the first assignment of error. In the second assignment of error, appellant contends that the trial court erred by concluding that both appellees were immune from liability in this instance under R.C. Chapter 2744. R.C. 2744.02(B)(1) provides that a political subdivision is liable for a death caused by the negligent operation of a motor vehicle by one of its employees within the scope of his or her employment. However, R.C. 2744.02(B)(1)(a) states that a political subdivision has a complete defense to liability if a member of its police department "was operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct." (Emphasis added.) Therefore, the two issues to be analyzed here are (1) whether Denvir was responding to an emergency call; and (2) whether Denvir's actions constituted wanton and willful misconduct.
An emergency call is "a call to duty including, but not limitedto * * * personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." (Emphasis added.) R.C. 2744.01(A). This statutory language is explicitly intended to be an exemplary, not exhaustive, list of emergency calls. Moore v. Columbus (1994),98 Ohio App.3d 701, 706. An emergency call need not be in response to an inherently dangerous situation. Id. An officer's observation of reckless driving may demonstrate that there is no genuine issue of material fact regarding whether the officer was responding to an emergency call. Rodgers v. DeRue (1991),75 Ohio App.3d 200, 203. See, also, Jacobs v.Cleveland (Dec. 11, 1997), Cuyahoga App. No. 72024, unreported, 1997 Ohio App. LEXIS 5538.
In the instant matter, upon observing the white Mustang "peel out" and then "fishtail," Denvir concluded that the vehicle was being driven recklessly. Based upon Denvir's testimony and affidavit, we conclude that he was responding to a "call to duty" that required an immediate response in order to stop the reckless operation of the Mustang and to protect other drivers on the roads. Therefore, appellant has failed to demonstrate the existence of any genuine issue of material fact regarding whether Denvir was responding to an emergency call.
The next question is whether Denvir's activity on October 1, 1994, amounted to wanton and willful misconduct. Wanton misconduct is "the failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor." Brockman v. Bell
(1992), 78 Ohio App.3d 508, 515. See, also, Hawkins v. Ivy (1977),50 Ohio St.2d 114, syllabus. On the other hand, willful misconduct is "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." Tighe v. Diamond (1948), 149 Ohio St. 520, 527. Among the factors in determining whether a police officer's pursuit of a vehicle constitutes wanton and willful misconduct are: (1) whether the police officer activated his or her overhead lights and siren; (2) the length of the chase; (3) the speed of the chase; and (4) whether the officer attempted to pass the pursued vehicle or tried to force it from the road. Rodgers at 204; Lewisv. Bland (1991), 75 Ohio App.3d 453, 457.
In the case sub judice, the evidence presented fails to present a factual question with respect to whether Denvir's actions constitute wanton and willful misconduct. Denvir activated his siren and overhead lights during the pursuit. According to appellant's expert, the length of the pursuit was only three minutes and forty-five seconds. Furthermore, the evidence indicates that during the pursuit, Denvir trailed the Mustang by at least two hundred yards, and as much as a quarter of a mile. Also, appellant has presented no evidence indicating that Denvir was traveling unreasonably fast on Newel Ledge Road, where the accident occurred. In fact, the evidence shows that the Mustang was traveling only at a rate of speed of approximately fifty m.p.h. and that Denvir was driving only about fifty-five m.p.h., which was the posted speed limit on that road. Moreover, the record contains no evidence indicating that Denvir attempted to overtake the vehicle or that he tried to force the Mustang off the road. Accordingly, Denvir did not act in a wanton or reckless manner in his pursuit of the Mustang.
Appellant also alleges that Denvir violated the standard operating procedures of the Village of Windham Police Department for pursuit situations. However, this court has determined that a violation of such procedures is irrelevant to the determination of whether Denvir's action rose to the level of wanton and willful misconduct. Rodgers at 205.[4] Therefore, appellant's evidential submissions have failed to raise a genuine issue of material fact regarding whether Denvir's pursuit constituted wanton and willful misconduct. Accordingly, the trial court properly concluded that the Village of Windham Police Department was immune from appellant's suit.
The next issue is whether Denvir, as an individual, is entitled to immunity under R.C. 2744.03, which provides that an employee of a political subdivision is immune from tort liability for death or injury in connection with a governmental function unless "[h]is acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" R.C. 2744.03(A)(6)(b). Governmental functions include law enforcement, R.C.2744.01(C)(2)(i), and "[a] function that promotes or preserves the public, peace, health, safety, or welfare[.]" R.C.2744.01(C)(1)(c). The Supreme Court of Ohio has equated the standard for reckless conduct with that of wanton and willful misconduct. Thompson v. McNeill (1990), 53 Ohio St.3d 102, 104, fn. 1. Therefore, we will apply the same legal standard to the issue of whether Denvir acted in a "wanton and willful" manner and whether he acted in a "wanton or reckless manner."
In the case at bar, we initially note that Denvir was performing a governmental function as a peace officer, because he was enforcing Windham Codified Ordinance 331.36, which prohibits "squealing tires." Furthermore, since we have concluded that Denvir's actions did not amount to "wanton and willful misconduct," we also hold that no factual question exists regarding whether his pursuit amounted to "wanton and reckless" conduct. Additionally, appellant does not contend that Denvir acted with a malicious purpose or in bad faith. Therefore, the trial court properly determined that both Denvir and the Village of Windham Police Department were immune from liability based on Ohio tort law with respect to Ferrell's death. Appellant's second assignment of error is without merit.
Furthermore, since appellees are immune from any state law claim arising from Ferrell's death, appellant's first assignment of error, which raises the issue of whether Denvir's conduct was the proximate cause of Ferrell's death, is moot. App.R. 12(A)(1)(c).
In the third assignment of error, appellant asserts that the trial court erred by granting appellees' motion for summary judgment on his claim under Section 1983, Title 42, U.S. Code,[5] which states:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"
Stated differently, our inquiry is first, whether Denvir acted under the color of state law, and, second, whether Denvir's conduct caused a deprivation of Ferrell's constitutional rights.Jones v. Sherrill (C.A.6, 1987), 827 F.2d 1102, 1104. Appellant contends that Ferrell, the decedent, was deprived of life without due process of law as provided in the Fourteenth Amendment to the United States Constitution.
As a preliminary matter, we note that appellant has brought the Section 1983 claim against both Denvir and the Village of Windham Police Department. However, a local governmental unit is not liable under Section 1983 unless the constitutional tort arises from "action taken pursuant to a policy of a local government."Monell v. Dept. of Soc. Serv. of the City of New York (1978),436 U.S. 658, 691. In the instant matter, appellant does not contend that Denvir was acting pursuant to a Village of Windham Police Department policy. Instead, appellant argues that Denvir did not follow the regulations, in an effort to demonstrate that Denvir acted in a wanton and willful manner. Therefore, the Village of Windham Police Department cannot be liable under Section 1983, and we will proceed with our discussion of the Section 1983 claim with respect to Denvir, personally.
Initially, we note that the parties do not dispute that Denvir was acting under color of state law. Therefore, our analysis begins with whether Denvir deprived Ferrell of her life without due process of law pursuant to the Fourteenth Amendment to the United States Constitution. See Jones at 1105. Mere negligence is insufficient to state a claim under Section 1983, Title 42, U.S. Code. Daniels v. Williams (1986), 474 U.S. 327, 330. However, an allegation of "gross negligence" exerted by a police officer in a pursuit situation may be sufficient to withstand a motion to dismiss. Jones at 1106. In defining gross negligence, the Sixth Circuit Court of Appeals has held that a defendant has acted in a grossly negligent manner for purposes of Section 1983, Title 42, U.S. Code "if he intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow."Nishiyama v. Dickson County, Tennessee (C.A.6, 1987),814 F.2d 277, 282.
In Jones, the court faced a factual scenario similar to the case at bar. In that case, the plaintiff's husband was killed when police officers were attempting to apprehend Charles Sherrill, a traffic offender. During the pursuit, Sherrill's automobile crossed the center line of the highway and collided with plaintiff's husband's vehicle, causing his death. In concluding that such facts failed to state a cognizable Section 1983 claim, the court explained:
 "The policy of pursuing fleeing offenders at issue in this case does not involve the kind of `wanton disregard' or `reckless indifference' to risk condemned in Nishiyama. The complaint does not allege that the police officers were engaged in a reckless and dangerous joy-ride for no good reason. The officers observed a car being driven in a dangerous manner. They had reason to believe that this car had been involved in an earlier accident. The driver did not stop when requested to do so. Rather than allowing the car to continue, possibly causing more harm, the officers followed a policy of pursing the vehicle at the speed necessary to apprehend it. This type of pursuit is simply not the kind of outrageous conduct or arbitrary use of government power which can state a section 1983 claim under Nishiyama." Jones at 1107.[6]
In our view, the same analysis adopted in Jones applies to the present case. Here, Denvir observed a traffic offense and reasonably concluded that the Mustang was being driven recklessly.[7] Under such facts, we cannot conclude that this type of activity creates a factual question regarding whether Denvir's pursuit amounted to gross negligence.[8] Therefore, the trial court properly granted appellees' motion for summary judgment on appellant's Section 1983 claims against Denvir and the police department. Appellant's third assignment of error is not well-taken.
For the foregoing reasons, appellant's second and third assignments of error are without merit, and appellant's first assignment of error is moot. The judgment of the Portage County Court of Common Pleas is affirmed.
DONALD R. FORD, PRESIDING JUDGE.
CHRISTLEY, J., and NADER, J., concur.
[1] Although the caption on this case lists the "Windham Township Police Department" as an appellee, we note that the real party at interest is the Village of Windham. First, Denvir testified that he was an officer for the Village of Windham Police Department, not the Windham Township Police Department. Second, a village police department is not a legal entity capable of suing and being sued, but instead the proper party to be sued is the village itself. See Fields v. Dailey
(1990), 68 Ohio App.3d 33, 45. Therefore, the trial court properly noted that the real party at interest is the "Village of Windham." Throughout this opinion we will refer only to the Village of Windham.
[2] Before activating his overhead lights and siren, Denvir observed no reckless driving by the driver of the Mustang other than the squealing of the tires.
[3] Appellant also filed a declaratory judgment action against Wayne Mutual Insurance Company, but that claim is not at issue in this appeal.
[4] We note that appellant attached such purported procedures without these materials having been properly sworn or certified. Therefore, they are not admissible under Civ.R. 56(C) or 56(E). However, since appellees did not object to the admission of such documentation, and the trial court expressly acknowledged the procedure in its judgment entry, we may consider such evidence on appeal. Biskupich v. WestbayManor Nursing Home (1986), 33 Ohio App.3d 220, 222.
[5] The immunity granted under R.C. Chapter 2744 is not applicable to "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States[.]" R.C. 2744.09(E). Therefore, appellees are not immune from appellant's claim under Section 1983, Title 42, U.S. Code.
[6] In Nishiyama, the sheriff's department permitted an individual who had been convicted of burglary to drive a marked cruiser from an officer's home to the prison where the inmate was serving time. While driving back to prison, the inmate inappropriately stopped several vehicles. During one of these stops, the inmate brutally murdered the woman in the stopped automobile. The Sixth Circuit Court of Appeals held that such conduct by the officers was sufficient to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6). Id. at 282-283.
[7] The only factual distinction between Jones and the instant matter is that the officers in that case were informed that the vehicle there may have been involved in an accident earlier that day. We are not persuaded that the lack of that factor in the present case creates a factual question with respect to whether Denvir acted in a grossly negligent manner.
[8] We note that the Sixth Circuit Court of Appeals has recently questioned whether gross negligence can be the basis of a Section 1983 cause of action after the decision of the Supreme Court of the United States in DeShaney v. Winnebago Cty. Dept. ofSoc. Serv. (1989), 489 U.S. 189. Foy v. City of Berea
(C.A.6, 1995), 58 F.3d 227, 230-231. In Foy, the court indicated that mere gross negligence by a police officer will not give rise to Section 1983 liability, but failed to clearly articulate the higher standard of misconduct that would give rise to liability under Section 1983.Id. Although we are aware of this emerging change in the law, we apply the gross negligence standard here, and conclude that appellant has not satisfied that less stringent standard.